**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
CHRISTOPHER HICKS,

                           :     **REPORT & RECOMMENDATION**

         Petitioner,

                           :     **09cv2531 (AJN) (MHD)**

    -against-

                           :

WILLIAM LEE,

                           :

         Respondent.
------------------------------X

2/9/15

TO THE HONORABLE ALISON J. NATHAN, U.S.D.J.:

Pro se petitioner Christopher Hicks seeks a writ of habeas corpus to challenge his 2005 conviction in the New York State Supreme Court, Bronx County, on single counts of manslaughter in the first degree and criminal possession of a weapon in the second degree. These charges stem from the death of Terrence Mallette in January 2003 following an altercation with petitioner. Hicks is currently serving a prison sentence of nineteen years on these convictions.

This case stems from a petition first filed in this court in early 2009. Since that original petition, Mr. Hicks has filed several supplementary documents, many of which contain additional grounds for relief or further refinements of his earlier allegations. All together, in petitioner's application to this Court, he asserts seven grounds for relief, four of which relate

1

to the trial court's handling of <u>Batson</u> objections raised during jury selection and three of which concern allegedly ineffective assistance of appellate counsel in failing to invoke petitioner's right to effective assistance of trial counsel. Respondent opposes. For the reasons that follow, we recommend that the writ be denied and that the case be dismissed with prejudice.

## BACKGROUND AND PRIOR PROCEEDINGS

On January 28, 2003, Hicks and Terrence Mallette were playing a game of dice in the lobby of Hicks's building in the Bronx. (Tr. II 267).[1] During the game, a dispute arose, and Mallette punched Hicks in the face. (<u>Id.</u> at 236-37, 318). After beating Hicks for some time, Mallette turned to leave the lobby. (<u>Id.</u> at 318). Hicks's nephew, Timothy Anderson, who was present at the scene, retrieved a gun and handed it to Hicks. (<u>Id.</u> at 321, 336). As Mallette exited the building, Hicks shot him in the back. (<u>Id.</u> at 206, 322, 337, 378). Several hours later, Mallette died at the hospital. (<u>Id.</u> at 217).

---

[1] References to the trial transcript will be cited to one of three volumes, listed on the docket as document nos. 7-9, and submitted by respondent in connection with its declaration in opposition to the original petition. Respectively, the three volumes contain transcripts of the following trial dates in 2005: (1) January 31 and February 1-2, which include jury selection and opening statements; (2) February 3, 7, 8, 9, and 10, which include the presentation of evidence and testimony of witnesses; and (3) February 14-15 and March 9, which include summations, the jury charge, and sentencing.

On or about May 12, 2003, a Bronx County grand jury indicted Hicks on two counts of second-degree murder, as well as single counts of first-degree manslaughter, second-degree criminal possession of a weapon, and third-degree criminal possession of a weapon. (See Resp't Decl. dated July 24, 2009 [docket no. 6] [hereinafter "Resp't Decl. I"] Ex. 2 at 3; Tr. II 569-71).

I. Jury Selection

Jury selection commenced on January 31, 2005 before the Hon. Richard Lee Price, S.C.J. (Tr. I 19). After the prosecutor and defense counsel had each exercised six peremptory challenges, four jurors -- three men and one woman -- were seated from the first panel of sixteen people. (Id. at 111-17; Addendum to Pet. [docket no. 2] 5).

During the second round of voir dire, defense counsel questioned one juror, Ms. Delerme, about her prior experience serving as a juror and her ability to remain impartial. (Id. at 163-64). Ms. Delerme responded that although she had strong feelings about the previous case, she "prayed" that her prior experience would not affect her in the current trial. (Id. at 164). Neither the defense nor the prosecution challenged her.

3

At the end of the second round of jury selection, defense counsel raised a <u>Batson</u> challenge[2] after the prosecutor struck four men of color from the panel. (<u>Id.</u> at 177-84). The prosecutor explained that three of the men had relatives who had been convicted of serious crimes, and he suspected that the other man would be unable to comprehend the complexities of such a serious case. (<u>Id.</u> at 179-80). Defense counsel responded by suggesting that the prosecutor's asserted explanations were pretextual. (<u>Id.</u> at 181). Defense counsel pointed out that three of the Hispanic women whom the prosecutor had not challenged also had relatives who had been convicted of crimes, and at least one other panelist had answered questions more slowly than the man who the prosecutor had suggested would not be able to understand the proceedings. (<u>Id.</u> at 180-81). The prosecutor distinguished the women from the men by noting that two of the women had served on juries before, and that he had observed that one of them had nodded her head after another panelist had given a pro-prosecution answer to a question. (<u>Id.</u> at 181-82). The trial judge dismissed the <u>Batson</u> challenge as follows:

> Okay. It's my determination that the prosecutor's response is not pretextual, that in light of all the challenges that have been made by both sides, if a

---

[2] Under <u>Batson v. Kentucky</u> and its progeny, a prosecutor's peremptory challenges asserted on the basis of protected characteristics such as race or sex violate the defendant's right to equal protection of the laws and a trial by a jury of his peers, as guaranteed by the Sixth and Fourteenth Amendments, as well as the constitutional rights of the challenged jurors themselves. 476 U.S. 79, 85 (1986); <u>J.E.B v. Alabama</u>, 511 U.S. 127, 129 (1994).

4

challenge had been made by the People as to the defense
challenging the five Hispanic females I would have
given it the same weight as given the challenge made by
the defense as to the prosecutor with reference to the
number of males, minority males challenged, there being
equal in number, and for those who are remaining to be
sat I decline to move any people back into the seats.

(Id. at 183).


In the third round of jury selection, defense counsel again

raised a Batson challenge when the prosecutor struck another male

juror of color. (Id. at 202-04). The prosecutor had in fact

struck two additional jurors, and responded to the Batson

challenge as follows:

> Right now I think I'm between a rock and a hard place.
> Miss Levy and Mr. Glasford [the juror on behalf of whom
> the defense raised Batson] have the same problem. They
> have people in their families, he was arrested and he's
> got a cousin arrested for drugs. He also said he didn't
> like the way police treated him even though he'll give
> these officers a fair shake, but that also tips the
> scale against him. He comes into this with a bad
> experience with police officers. A lot of my witnesses
> are police officers and with Miss Levy, she had a
> nephew who was acquitted of murder but still he was
> charged with murder and if I didn't exercise the
> challenges for these reasons which is the same reasons
> I gave in the last round it would open me up to other
> attacks so I'm being consistent.

(Id. at 203). Here -- in contrast to the ruling after the defense

attorney's earlier Batson challenge -- the trial judge concurred

with defense counsel: "I am sustaining [this Batson objection].

What is the right words for me to use[?] Something I should have

referred to before. I don't accept your race neutral explanation

5

as to the juror challenge and find that it is pretextual as to him, so he will be reseated." (Id. at 204).

II. Trial

At trial, petitioner's grand-jury testimony was read into the record. (Tr. II 317-42). Hicks testified that he and Mallette had been playing a game of dice in the lobby of their building, accompanied by Hicks's nephew Timothy Anderson and Mallette's friend, Anthony Blackwell, when Hicks and Mallette began engaging in a physical altercation. (Id. at 318, 321; see also id. at 221). Hicks testified that Mallette began beating him and told Blackwell to "go get that" (id. at 318, 329),[3] which Hicks interpreted to mean "go get a gun." (Id.). According to Hicks, after two or three minutes, Mallette began to exit the building towards his car, which was parked across the street and where Hicks believed Mallette had a gun. (Id. at 318). Hicks testified that he also believed that Blackwell had gone upstairs to retrieve a gun from Mallette's girlfriend's apartment on a higher floor. (Id. at 318-19; see also id. at 240-44).

---

[3] During the course of this testimony, Hicks referred to Blackwell alternately as Mr. Mallette's "friend" and "cousin" (see Tr. II 318), although Mr. Blackwell's testimony makes clear that he was a friend of Mr. Mallette through Mr. Blackwell's cousin, June. (Tr. II 223).

According to Hicks, at some point during the three-minute altercation, Anderson went into an apartment on the first floor - - shared by both Hicks and Anderson -- retrieved a black .45 caliber pistol, and handed it to Hicks. (Id. at 320-25). Hicks remembered shooting twice from the door of the building as Mallette was nearing his car, about thirty-five to forty feet away. (Id. at 318, 322, 337-39). Hicks said that he then ran, leaving the gun (id. at 326), which was in fact never recovered. (See, e.g., id. 433-37).

Blackwell and Mallette's girlfriend, Mecca Willis, also testified at trial. (Id. at 219-88; 143-96). Blackwell recounted that during the altercation between Hicks and Mallette, Anderson had provided Hicks with a firearm. (Id. at 240-41). He and Willis both stated that, at the time of the shooting, Willis had been in her apartment on the second floor, and that Blackwell had run upstairs, but they denied that he had been looking for a gun. (Id. at 146, 160-62, 243-44). They also testified that they had never seen Mallette with a gun. (Id. at 155, 226). The police apparently never searched Willis, Blackwell, the apartment, or the car. (Id. at 111, 358).

Detective Daniel Mullarkey, a homicide investigator with the New York Police Department, testified that four shell casings had

7

been found at the crime scene. (Id. at 85-89). According to
Detective Glenn Jacklitsch, an evidence processor and collector
with the Crime Scene Unit of the NYPD, these four casings had all
been fired from a .45 caliber semiautomatic pistol. (Id. 42-43,
54-56; see also id. at 439). Detective Kevin Barry -- a firearms
analyst and ballistics expert -- confirmed that these casings had
been fired from a single .45 caliber gun (id. at 423-24, 435-36)
and that the bullets in Mr. Mallette's body had also been fired
from a single .45 (id. at 443-45), but he could not unequivocally
determine that the bullets had been fired from the same gun as
the casings. (Id. at 444-45).


Dr. James Gill, a medical examiner, reported that one bullet
had entered Mallette's lower left back, and the second had
entered the upper front of the right thigh. (Id. at 369, 375-78).
The first bullet perforated Mallette's major blood vessels and
liver. (Id. at 375). The second did not hit any major blood
vessels, but caused bleeding, which the examiner asserted
contributed to his death. (Id.). Ultimately, the medical examiner
identified the cause of death as "gunshot wound of
torso...[which] means that he sustained more than one gunshot
wound of his body that caused injury of internal blood vessels,
organs, that resulted in internal bleeding." (Id.).


8

III. <u>Verdict and Sentence</u>

The jury returned its verdict on February 15, 2003. (Tr. III 567-73). It found Hicks not guilty of second-degree murder, but guilty of first-degree manslaughter and second-degree criminal possession of a weapon. (<u>Id.</u> at 569).[4]

On March 9, 2005, the Court sentenced Hicks to concurrent terms of nineteen years on the manslaughter conviction, and five years for the weapon conviction. (<u>Id.</u> at 17).[5]

IV. <u>Petitioner's Appeal</u>

On appeal to the Appellate Division, First Department, Hicks pressed several grounds for relief from his conviction, all based on the trial court's conduct of jury selection. (<u>See</u> Addendum to Pet.).[6] Petitioner argued as follows: (1) The trial court had

---

[4] During the reading of the verdict, the judge's clerk initially asked whether the jury found petitioner guilty of third-degree criminal possession of a weapon, to which the foreperson answered in the affirmative. (Tr. III 569). This was quickly corrected, however, to the second-degree offense. (<u>Id.</u>).

[5] Although separately paginated, the transcript of petitioner's sentencing is included at the end of the third volume of transcripts.

[6] In petitioner's initial brief to the Appellate Division, his arguments are framed somewhat differently than we present them here. (<u>See</u> Addendum to Pet. 10-27). For clarity's sake, we instead adopt the reframing of petitioner's arguments as stated by respondent in its opposition to the petition. (<u>See</u> Resp't Decl. I at ¶ 10). This was the structure generally used by the state in its opposition to the original appeal (<u>see</u> Ex. 2 to Resp't Decl. I) and quite explicitly utilized by the Appellate Division in its decision affirming the judgment of the trial court. <u>See</u> <u>People v. Hicks</u>, 46 A.D.3d 466, 848 N.Y.S.2d 141 (1st Dep't 2007).

erred when it compared the prosecution's use of peremptory challenges with the defense's challenges, since the appropriate test is not comparative [hereinafter "Ground One"]. (Id. at 10-16). (2) The court had erred in accepting "transparently pretextual" reasons for striking four minority males from the jury panel [hereinafter "Ground Two"]. (Id. at 16-27). (3) The court had failed to "explicitly adjudicate" the credibility of the race-neutral reasons proffered by the prosecution, and instead had stated in cursory form that they were not pretextual [hereinafter "Ground Three"]. (Id. at 16-18). (4) Subsequent to the four rejected Batson objections, the court did find the prosecutor's explanation of another peremptory challenge to have been pretextual, which was "further support for the conclusion that his earlier challenges...[were] insincere and a pretext for intentional discrimination" [hereinafter "Ground Four"]. (Id. at 23-24).

On December 27, 2007, the Appellate Division affirmed petitioner's conviction. Hicks, 46 A.D.3d at 466-67, 848 N.Y.S.2d at 141. In doing so, it observed that the trial court's Batson analysis (Ground Two, above) -- essentially an "assessment of the prosecutor's credibility" -- was entitled to great deference and was supported by the record. Id. As to Grounds One, Three, and Four, the court held that they were unpreserved, and it refused

10

to address them in the interest of justice. Id. In the alternative, the Appellate Division noted that even if it had reviewed those claims, it would have found no basis for reversal. Id.

Petitioner next sought leave to appeal to the New York Court of Appeals. On March 28, 2008, that court denied his application. People v. Hicks, 10 N.Y.3d 811, 857 N.Y.S.2d 45 (2008).

## V. Petitioner's Post-Appeal Applications

On February 9, 2009,[7] Hicks filed a pro se petition for a writ of habeas corpus in this Court. (See docket no. 2). Without further elaboration in the body of the petition itself, he incorporated the four claims that he had articulated on direct appeal by attaching, as an addendum, his initial brief to the Appellate Division. (Id.).

On July 24, 2009, respondent filed opposition papers, asserting -- as the Appellate Division had done -- that Grounds One, Three, and Four were unpreserved and thus procedurally barred from habeas review. (Resp't Mem. I at 6-12). Respondent also asserted that the Appellate Division's rejection of

_____

[7] This petition was stamped as received by the SDNY Pro Se Office on February 26 and the case "filed" for purposes of ECF on March 19.

11

petitioner's claims with respect to Ground Two -- accepting allegedly pretextual reasons for four of the prosecution's peremptory strikes -- was neither contrary to nor an unreasonable application of Supreme Court precedent. (Id. at 13-24).

Following the commencement of this habeas proceeding, Hicks filed two separate coram-nobis applications with the Appellate Division, on September 14, 2009 and on January 26, 2011, respectively. (Resp't Decl. filed March 7, 2014 [docket no. 37] [hereinafter "Resp't Decl. II"] Exs. 1 & 6). In both applications, Hicks generally invoked the Sixth Amendment, arguing that appellate counsel had been ineffective in that they had overlooked his trial counsel's constitutional deficiencies. (Id.). In his first application, petitioner asserted that trial counsel had failed to preserve the Batson claims that the Appellate Division had subsequently declined to review in the interest of justice (hereinafter "Ground Five"). (Ex. 1 to Resp't Decl. II). In his second application, he made two additional ineffective-assistance arguments, complaining that his appellate counsel should have noted these alleged deficiencies in his trial representation. (Ex. 6 to Resp't Decl. II). First, he charged that the trial court's instructions had failed to state that if the jury determined that Hicks had been justified in committing the greater homicide offense of murder, it should not evaluate

12

the lesser-included charges; according to Hicks, his attorney should have objected to the omission and failed to do so (hereinafter "Ground Six"). (Id. at pp. 2-5, 9-10). Second, he argued that trial counsel had failed during voir dire to ensure that one of the panelists -- Ms. Delerme -- unequivocally express her ability to be fair and impartial (hereinafter "Ground Seven"). (Id. at pp. 7-9). The Appellate Division denied both applications. (Exs. 3 & 8 to Resp't Decl. II). When petitioner was informed of these decisions,[8] he applied for leave to appeal to the Court of Appeals (Exs. 4 & 9 to Resp't Decl. II), which was denied. (Exs. 5 & 10 to Resp't Decl. II).

During the pendency of Hicks' first coram-nobis application, he sought to stay this habeas proceeding to exhaust his ineffective assistance claim and to amend his petition. (See docket nos. 11-14). In an order dated January 15, 2010, the District Court granted this motion, and set a deadline of February 25, 2010 to file an amended petition. (Id.). On February 22, 2010, petitioner timely amended his habeas petition, which generally incorporated his earlier asserted grounds for relief[9]

---

[8] One of the substantial delays during the pendency of this case was due to the long period of time between the Appellate Division's denial of petitioner's second coram-nobis petition on December 20, 2011 and the date on which petitioner apparently was informed of this development, on February 20, 2013. (See Resp't Decl. II at p. 4 n.4).

[9] Taken in a vacuum, this amended petition actually only incorporates two of the four original grounds for relief. (See Am. Pet. ¶ 13 [docket no. 16]). However, given petitioner's pro se status and the multitude of repeat filings in this case, we take his renewed applications to be inclusive of all previous

13

and added his claim of ineffective assistance of appellate counsel for failing to raise his allegedly ineffective trial counsel's handling of the unpreserved <u>Batson</u> issues. (<u>See</u> Am. Pet. ¶ 13 [docket no. 16]).

On July 31, 2010, petitioner wrote to the court requesting that the case continue to be stayed and that he be granted leave to pursue his second set of <u>coram</u>-<u>nobis</u> claims, presumably with a view to another amended petition. (<u>See</u> Letter dated July 31, 2010 [docket no. 19]). On December 20, 2010, the court granted petitioner leave to amend and consolidate his petition, requiring that he do so within thirty days of exhaustion in state court and staying the case until the conclusion of such efforts. (<u>See</u> Endorsement dated Dec. 20, 2010 [docket no. 20]).

On June 19, 2013, petitioner informed the court that the New York Court of Appeals had again denied him leave with respect to his most recent <u>coram</u>-<u>nobis</u> applications. (<u>See</u> Letter dated June 19, 2013 [docket no. 26]). Subsequently, on August 14, 2013, the court ordered that the stay on Hicks' petition be lifted and that he file an amended petition by September 12, 2013. (Order dated Aug. 14, 2013 [docket no. 27]). Petitioner submitted a "Notice of Motion to Move to Amend" accompanied by an affidavit and a

_____
grounds for relief.

14

memorandum of law on September 11, 2013 (see docket no. 30), which the court subsequently deemed to be a supplemental petition. (Order dated Oct. 7, 2013 [docket no. 33]). This application asked that Grounds Five, Six, and Seven -- those relating to ineffective assistance of appellate counsel, in their failure to raise ineffective assistance of trial counsel -- be included among those asserted in the petition. (See docket no. 30).

On March 6, 2014, respondent filed a declaration and memorandum of law in opposition to the supplemented petition. (See Resp't Decl. II). In so doing, respondent explicitly incorporated its first declaration and memorandum into its opposition. (Resp't Decl. II ¶ 4 n.2). Petitioner filed his reply on April 7, 2014. (Docket no. 38).

ANALYSIS

I. Standard of Review

The stringency of federal habeas review turns on whether the state courts have passed on the merits of a petitioner's claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim

15

advanced, rather than on a procedural, or other, ground." Sellan
v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28
U.S.C. § 2254(d)). If the state court has addressed the merits,
the petitioner may obtain relief only if the state court's ruling

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see, e.g., Harrington v. Richter, 562 U.S.
86, __, 131 S.Ct. 770, 783-84 (2011); Bell v. Cone, 535 U.S. 685,
693-94 (2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000)
(O'Connor, J., concurring); Besser v. Walsh, 601 F.3d 163, 178
(2d Cir. 2010), vacated on other grounds sub nom., Portalatin v.
Graham, 624 F.3d 69 (2d Cir. 2010) (en banc); Howard v. Walker,
406 F.3d 114, 121-22 (2d Cir. 2005); Brown v. Artuz, 283 F.3d
492, 498 (2d Cir. 2002).


Clearly established federal law "'refers to the holdings, as
opposed to the dicta, of the Supreme Court's decisions as of the
time of the relevant state-court decision.'" Howard, 406 F.3d at
122 (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)).
"[A] decision is 'contrary to' clearly established federal law
'if the state court arrives at a conclusion opposite to that

16

reached by [the Supreme] Court on a question of law or if the state court decided a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" Howard, 406 F.3d at 122 (quoting Williams, 529 U.S. at 413); see also Marshall v. Rodgers, 133 S.Ct 1446, 1448 (2013).

What constitutes an "unreasonable application" of settled law is a somewhat murkier proposition. "'A federal court may not grant habeas simply because, in its independent judgment, the 'relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Howard, 406 F.3d at 122 (quoting Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001)). The Supreme Court observed in Williams that the writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from this Court's decisions [and] unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 410-13. As implied by this language, "'[s]ome increment of incorrectness beyond error is required ... [H]owever ... the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.

2000)); accord Richard S. v. Carpinello, 589 F.3d 75, 80 (2d Cir. 2009).

Under the Supreme Court's more recent, and arguably more stringent, interpretation of the statutory language, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at __, 131 S.Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Harrington, 562 U.S. at __, 131 S.Ct. at 786. Under this more recent interpretation, a federal habeas court has "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Id. In other words, to demonstrate an 'unreasonable' application of Supreme Court law, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

18

existing law beyond any possibility for fairminded disagreement." Id. at 786-87. "As Harrington bluntly states, '[i]f this standard is difficult to meet, that is because it was meant to be.'" Young v. Conway, 715 F.3d 79, 98 (2d Cir. 2013) (quoting Harrington, 562 U.S. at __, 131 S.Ct. at 786).

As for the state courts' factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Richard S., 589 F.3d at 80-81; McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003); see also Rice Collins, 546 U.S. 333, 338-39 (2006).

## II. Petitioner's Claims

Altogether, in petitioner's submissions in support for a writ of habeas corpus, he asserts seven grounds for relief, four Batson claims grounded in the substance of his original appeal (see, e.g., Addendum to Pet.; Am. Pet. ¶ 13(1), 13(2); Pet'r's Reply 14-21) and three concerned with ineffective assistance of appellate counsel. (See, e.g., Am. Pet. ¶ 13(3); Mot. to Am.; Pet'r's Reply 25-28).

Briefly, these asserted grounds for relief are as follows: (1) the trial court erred when it compared the prosecution's use of peremptory challenges with the defense's use of its challenges; (2) the court erred in conducting step three of the Batson analysis during the second round of jury selection, by accepting "transparently pretextual" reasons for striking four minority males from the jury panel; (3) the court failed to "explicitly adjudicate" the credibility of the reasons proffered by the prosecution for the strikes; and (4) the court's determination that the prosecutor had been racially biased in round three of voir dire suggests that the prosecutor's challenges in the prior round of jury selection had also been racially motivated and his explanations for those challenges had been pretextual. Petitioner also asserts that his appellate counsel was ineffective for failing to argue or raise trial counsel's failure to (5) preserve the forfeited Batson claims, (6) object to a purportedly inadequate jury charge on justification, and (7) unequivocally ensure that a particular juror could be impartial.

Respondent opposes, arguing that three of petitioner's four Batson claims (Grounds One, Three, and Four) are unpreserved and procedurally barred, and that the fourth (Ground Two), as well as the ineffective trial and appellate counsel claims, are

20

meritless. (See generally Resp't Mem. I; Resp't Mem. II). As to the unpreserved Batson claims, respondent argues in the alternative that even if those claims are not procedurally barred, the state court ruling was neither contrary to, nor an unreasonable application of, Supreme Court law. (Resp't Mem. I 20-24). With respect to petitioner's ineffective-assistance-of-counsel claims, respondent contends that counsel at both the trial and appellate levels provided adequate assistance and that the underlying claims are meritless. (Resp't Mem. II 6-21).

III.   Assessment

A. The Preserved Batson Claim (Ground Two)

Under Batson and its progeny, once the defendant makes a prima facie showing that the prosecutor peremptorily struck prospective jurors based solely on their race, the burden shifts to the prosecutor to offer a race-neutral explanation for each challenge. Batson, 476 U.S. at 97. The prosecutor's explanation need not be persuasive or even plausible, and the reason offered will be deemed race-neutral unless discriminatory intent is inherent in the explanation. Purkett v. Elem, 514 U.S. 765, 768 (1995); United States v. Martinez, 621 F.3d 101, 109 (2d Cir. 2010). After the prosecutor has offered a race-neutral

21

explanation, the burden returns to the defendant to show that the prosecutor's explanation in fact was pretextual. Purkett, 514 U.S. at 767. Finally, the court must determine whether the "defendant has carried his burden of proving purposeful discrimination." Hernandez v. New York, 500 U.S. 352, 359 (1991). Since this last determination turns largely on an "evaluation of credibility, a reviewing court ordinarily should give those findings great deference." Id. at 364.

Petitioner's preserved Batson claim is based on an alleged error that occurred during round two of voir dire. (Tr. I 177-84). There, petitioner raised a Batson challenge after the prosecutor peremptorily challenged three African-American men and one Hispanic man: Edward Rice, juror number two; Derrick McCullough, juror number ten; Willie Williams, juror number fifteen; and David Martinez, juror number fourteen. (Id. at 176-79; see also Addendum to Pet. 10). The prosecutor responded that three of them, Mr. Rice, Mr. Williams, and Mr. Martinez, had relatives who had been convicted of serious crimes and that he suspected that the fourth, Mr. McCullough, did not have the capacity to understand the proceedings. (Id. at 179-80). Petitioner's trial counsel argued that since the prosecutor had not challenged three Hispanic women who had similar family histories, and there had been other potential jurors who had

22

answered more slowly than Mr. McCullough, the reasons all sounded pretextual. (Id. at 180-81).

The court concluded that the prosecutor's response was not pretextual, stating as follows:

> It's my determination that the prosecutor's response is not pretextual, that in light of all of the challenges that have been made by both sides, if a challenge had been made by the People as to the defense challenging the five Hispanic females I would have given it the same weight as given the challenge made by the defense as to the prosecutor with respect to the number of males, minority males challenged, there being equal number, and for those who are remaining to be sat I decline to move any people back into their seats.

(Id. at 183). Defense counsel did not thereafter object. (Id. at 183-84).

In the third round of voir dire, petitioner asserted another Batson challenge after the prosecutor peremptorily challenged George Glasford, an African American man. (Id. at 203). The prosecutor defended his challenge on the ground that Mr. Glasford suffered from the same problem as those that he had challenged in the second and third rounds, namely that he had family members who had been arrested. (Id. at 203). He went on to say that "if I didn't exercise challenges for these reasons which is the same reasons I gave in the last round it would open me up to other attacks so I'm being consistent." (Id. at 203-04).

23

The court granted the defense motion, noting "I am sustaining it. What [are] the right words for me to use[?] Something I should have referred to before. I don't accept your race neutral explanation as to the juror challenge and find that it is pretextual as to him, so he will be reseated." (Id. at 204).

On appeal, as in his current petition, Hicks complained that the trial court had erred in accepting the prosecution's proffered explanations for challenging the jurors in the second round of jury selection and upholding those strikes. (See Addendum to Pet 9-16). Respondent contends that the Appellate Division's resolution of this issue was neither contrary to, nor an unreasonable application of, Supreme Court law, and, as such, it is barred from habeas review. (Resp't Mem. I 13-24).

The Appellate Division decided this claim on the merits, determining that the trial court had properly found that the prosecutor's reasons were not pretextual. Hicks, 46 A.D.3d at 466, 848 N.Y.S.2d at 141-42. Thus, Hicks's habeas petition may be granted only if the Appellate Division's determination was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). To determine whether the Appellate Division acted contrary to, or

24

unreasonably applied, Supreme Court law, we examine both the Appellate Division's decision and the arguments made by the prosecutor and defendant regarding each peremptory challenge.

In this case, the Appellate Division's conclusion is not an unreasonable application of Supreme Court law, as it properly deferred to the findings of the trial court. See Hicks, 46 A.D.3d at 466, 848 N.Y.S.2d at 141-42. Under Batson, the findings of the trial judge as to the prosecutor's explanations are entitled to great deference. 476 U.S. at 98 n.21. The Appellate Division identified this principle when it cited to People v. Hernandez, 75 N.Y.2d 350, 553 N.Y.S.2d 85 (1990), aff'd, 500 U.S. 352 (1991), in support of its decision to affirm the trial court's conclusion that the prosecutor's explanation was not pretextual. Hicks, 46 A.D.3d at 466, 848 N.Y.S.2d at 141. In Hernandez, the prosecutor challenged two Latino jurors after they expressed reluctance to trust the translator's English-language interpretation of witness testimony. 500 U.S. at 372. The Supreme Court held that the trial court was not clearly erroneous in choosing to believe the prosecutor's explanation because "'[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" Hernandez, 500 U.S. at 369-70 (quoting Anderson v. Bessemer City, 470 U.S. 564, 574 (1985)).

The Appellate Division correctly applied this principle here. First, as for Mr. McCullough -- juror number ten -- who the prosecutor claimed had not displayed the requisite intelligence to comprehend the proceedings, the prosecutor's explanation was vague. (See Tr. I 180 ("As to number ten, I agonized over him. I just thought -- how to put this delicately -- I didn't think he had the wherewithal to sit in a serious case like this and understand all the complexities")). However, given defense counsel's response, the proffered explanation seems to have been based on the slowness with which the potential juror had responded to the questions posed to him and his ability to articulate clear answers. (See id. at 180-81). The record does not, and indeed cannot, provide any insight concerning how quickly Mr. McCullough's responded to questions posed to him. However, the record does demonstrate that Mr. McCullough gave one-word answers to almost every question he was asked. (Id. at 157).[10] Additionally, the prosecutor repeatedly questioned him about whether his job as a traffic agent with the New York Police Department would affect his ability to sit in judgment on the case. (Id. at 157-58). The prosecutor might have asked repeatedly

---

[10] We also note that, at one point, after the prosecutor asked Mr. McCullough a particularly long question about the justification defense, the prosecutor added, "Sometimes my questions, is that too complicated?" to which Mr. McCullough responded, "I have to hear everything in, I guess." (Tr. I 158-59). At the very least, this short (albeit confusing) colloquy implies that the prosecutor was concerned about Mr. McCullough's comprehension of the complexities of the case well before he was asked to provide a reason for his peremptory strike.

26

because he suspected, as he claimed when defending himself following the Batson challenge, that Mr. McCullough did not understand the questions. Alternatively, he might have focused on Mr. McCullough, as Hicks's trial counsel claimed, because McCullough was black, and the prosecutor wanted to keep him off the jury. As in Hernandez, we have no opportunity to review the "prosecutor's demeanor," but where there are at least two interpretations of the facts, the Appellate Division was correct in deferring to the finding of the trial court. See Hernandez, 500 U.S. at 370.[11]

Additionally, if the slowness of a juror's response is considered an aspect of that juror's demeanor -- a notion generally supported by at least one case in this district, see Guerro v. Artuz, 2002 WL 619576, *3 (S.D.N.Y. Apr. 17, 2002) -- it was wholly appropriate for the trial court to accept the prosecutor's explanation for his strike. The Supreme Court has held that "[d]eference is especially appropriate where a trial

---

[11] Respondent argues that one reason why the trial court chose to credit this explanation is because Mr. McCullough responded to the "prosecutor's initial question as to whether he would be able to apply the 'fairly complicated set of rules' related to the anticipated justification defense" with a "one-word negative response." (Resp't Mem. I 17 (quoting Tr. I 159)). However, this is a clear mischaracterization of the prosecutor's question. In fact, the prosecutor asked whether there was "anything about the idea of justification or self-defense where you think you have an idea in your own mind about what it should be that you're going to use your idea over what the Judge is going to say?" (Tr. I 159). In other words, the prosecutor was asking, albeit in convoluted fashion, whether Mr. McCullough was going to ignore the judge's instructions and instead use his own definition of self-defense. That Mr. McCullough responded "no" does not itself provide a compelling reason for challenging him.

judge has made a finding that an attorney credibly relied on demeanor in exercising a strike." <u>Snyder v. Louisiana</u>, 552 U.S. 472, 479 (2008); <u>see</u> <u>also</u> <u>Brown v. Kelly</u>, 973 F.2d 116, 121 (2d Cir. 1992) ("An impression of the conduct and demeanor of a prospective juror during the <u>voir</u> <u>dire</u> may provide a legitimate basis for the exercise of a peremptory challenge"). Thus, assuming that the prosecution considered Mr. McCullough's demeanor to be illustrative of some perceived lack of capacity, the trial court did not err in accepting the prosecutor's explanation.

Additionally, even if Mr. McCullough's mental capacity was not apparent from his demeanor, the fact that the Supreme Court has not ruled explicitly, or by implication, that mental capacity is a not facially neutral reason for a peremptory challenge suggests that habeas relief is not available, since the state court's ruling had not been an unreasonable application of existing Supreme Court law. Where Supreme Court law offers no clear support for a petitioner's legal contention, habeas review is normally inapt. <u>Hines v. Miller</u>, 318 F.3d 157, 164 (2d Cir. 2003); <u>Parilla v. Berle</u>, 679 F. Supp. 2d 441, 447 (S.D.N.Y. 2010). Moreover, although we are not aware of any Supreme Court decision that addresses this question, courts in this Circuit have offered guidance that a "juror's lack of mental capacity"

28

will be presumed nonpretextual. Minetos v. City Univ. of New York, 925 F. Supp. 177, 184 (S.D.N.Y. 1996) (citing Appellate Court Guidance On Batson Challenges, 215 N.Y.L.J. 48 (Mar. 12, 1996)); see also Harris v. People, 2010 WL 681061, *6 (W.D.N.Y. Feb. 19, 2010).

As to jurors Martinez, Rice, and Williams, the prosecutor reasoned that each of them had relatives who had beeb convicted of serious crimes, and he did not want people with their respective backgrounds to sit on the jury. (Tr. I 179-180). Though defense counsel pointed out that the prosecutor had allowed several Hispanic women to sit despite also having relatives who had been arrested, the trial court found that the prosecutor's reasons were not pretextual. (Id. at 182-83). The Appellate Division held that there was sufficient evidence in the record to support the trial court's conclusion, acknowledging that "[t]he prosecutor articulated specific reasons for challenging certain panelists while simultaneously accepting others alleged by defendant to be similarly situated to the challenged panelists." Hicks, 46 A.D.3d at 466, 848 N.Y.S.2d at 142.

The Appellate Division correctly applied Hernandez to these three jurors as well. Since the record clearly confirms that the

men had family and friends with criminal histories (Tr. I 127, 146, 147), the Appellate Division did not err in deferring to the trial court's decision to credit the prosecutor's explanation for the peremptory strikes.

In reaching this conclusion, we note that the fact -- acknowledged by the Appellate Division -- that the prosecutor did not challenge other persons who shared the same cited trait weakens the prosecutor's claim that his reasons were not pretextual. Such circumstances possibly required that he proffer other grounds for distinguishing those challenged jurors. United States v. Alvarado, 951 F.2d 22, 25 (2d Cir. 1991) ("[A]n explanation for a peremptory challenge, though weakened, is not automatically to be rejected simply because it applies to a non-minority venireperson who was not challenged ... In these cases, however, the prosecutor had put forward other reasons, in addition to the trait shared with the unchallenged jurors, which enhanced the credibility of the prosecutor's explanation."); see also Miller-El v. Dretke, 545 U.S. 231, 232 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to a white panelist allowed to serve, that is evidence tending to prove purposeful discrimination."); Jordan v. Lefevre, 293 F.3d 587, 594 (2d Cir. 2002).

30

Here, the prosecutor did just that. He distinguished the supposedly similar groups -- the women whom he had not challenged from the men of color whom he had challenged -- by pointing out that two of the women had been selected as jurors in criminal cases before and that he had seen one "nodding fairly emphatically" after another juror gave a "pro prosecution" answer. (Tr. I 181-82). The record supports the first contention: Ms. Delerme and Ms. Mercado both said that they had served on juries before (id. at 125, 145), whereas Mr. Rice, Mr. Martinez, and Mr. Williams had each said that they had not previously served on a jury. (Id. at 127, 146, 147). The record cannot confirm the prosecutor's second point -- about a juror nodding at a specific moment -- but, again, such an "impression of the conduct and demeanor of a prospective juror during the voir dire" can provide a legitimate basis for a peremptory challenge. Brown, 973 F.2d at 121. Given the prosecutor's additional explanation, the Appellate Division's affirmance of the trial court's conclusion that the prosecutor's reasons as to jurors Martinez, Rice, and Williams were not pretextual was neither contrary to, nor an unreasonable application of, Supreme Court law.

In sum, the preserved Batson claim does not provide a basis for granting petitioner habeas relief.

B. The Remaining Batson Claims (Grounds One, Three, and Four)

The Appellate Division explicitly rejected as unpreserved Hicks's remaining Batson claims -- "that, in making its ruling on defendant's Batson application, the court improperly considered defendant's own pattern of challenges; that the court failed to articulate its reasons for finding that the prosecutor's explanations were nonpretextual; and that the prosecutor's explanation for a challenge he made to another juror in a later round of voir dire supports the conclusion that his earlier challenges were pretextual." Hicks, 46 A.D.3d at 467, 848 N.Y.S.2d at 142. Moreover, the court declined to review them in the interest of justice, but went on to say that even if it were to review the claims, it would find no basis for reversal. Id.

Respondent contends that the Appellate Division's determination that these claims were unpreserved constitutes an independent and adequate state ground barring federal habeas corpus review. (Resp't Decl. I ¶ 10; Resp't Mem. I 6-12). In the alternative, he argues that even if the claims are not procedurally barred, they are meritless. (Id. at 20-24). While petitioner continues to press these claims even in his most recent application (see, e.g., Pet'r's Reply 19-21), he appears

to tacitly acknowledge that they were unpreserved and argues instead that this failure should be excused due to the ineffectiveness of his counsel. (Id. at 12-13, 21-23).

We conclude that petitioner's three unpreserved claims are procedurally barred, and, moreover, that they are meritless. We address the Sixth Amendment claims separately. (See infra pp. 50-69).

### 1. Procedural Bar

#### i. General Criteria

If the highest state court to address a federal-law claim disposes of it on a "state-law ground that is 'independent of the federal question and adequate to support the judgment,'" a federal habeas court may not review that claim unless the petitioner demonstrates both cause for his default and prejudice or else establishes that a failure to address the claim would constitute a fundamental miscarriage of justice. See, e.g., Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); see also Jimenez v. Walker, 458 F.3d 130, 138-40 (2d Cir. 2006) (citing Harris v. Reed, 489 U.S. 255

33

(1989)). A state procedural rule can qualify as an adequate and independent state-law ground. See Harris, 489 U.S. at 260-61.

To be independent, the state-law holding must rest on state law that is not "'interwoven with the federal law.'" Jimenez, 458 F.3d at 137 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). Since it can be "'difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference,'... reliance on state law must be 'clear from the face of the opinion.'" Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (quoting Coleman, 501 U.S. at 732, 735). When determining whether we may entertain a claim, we "apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'" Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (quoting Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000)).

In this regard, even if the appellate court rejects the claim as unpreserved and then, in the alternative, notes that if it had reviewed the merits it would have rejected the claim, the ruling is deemed, for this purpose, to have rested on the state-law procedural ground. See Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007) ("Even where the state court has ruled on the merits

34

of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default.") (citation omitted); <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005); <u>see</u> <u>also</u> <u>Bell v. Miller</u>, 500 F.3d 149, 155 (2d Cir. 2007) (state court's "contingent observation" is not an "adjudication on the merits" for purposes of habeas review).

As for the requirement of adequacy, the state procedural rule must be "'firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case." <u>Murden</u>, 497 F.3d at 192 (quoting <u>Monroe</u>, 433 F.3d at 241); <u>see</u> <u>also</u> <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002); <u>Cotto v. Herbert</u>, 331 F.3d 217, 239 (2d Cir. 2003) (citing <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999)). However, principles of comity caution against categorizing a state procedural rule as inadequate "lightly or without clear support in state law." <u>Garcia</u>, 188 F.3d at 77 (internal quotation marks omitted).

Once a respondent has demonstrated that the state court relied on an independent and adequate ground, it is incumbent upon the petitioner to meet one of two recognized exceptions. <u>Coleman</u>, 501 U.S. at 750. Under procedural-bar rules, we may not review the merits of the claim unless petitioner can overcome his

35

procedural default by either "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or [establishing] ... that failure to consider the claims will result in a fundamental miscarriage of justice." Id.; see also Fama, 235 F.3d at 809.

To demonstrate cause, petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," for example, by showing that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials ... made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (citing Reed v. Ross, 468 U.S. 1, 16 (1984) and quoting Brown v. Allen, 344 U.S. 443, 486 (1953)). A petitioner may also satisfy the cause requirement by demonstrating that the failure of his attorney to comply with state procedural rules denied him constitutionally adequate representation. See Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999). He cannot invoke this ground, however, unless he first asserted an equivalent independent Sixth Amendment claim in state court and exhausted his state-court remedies with respect to that claim. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). In any event, it bears emphasis that "[a] defense counsel's ineffectiveness in failing to properly preserve a claim

for review in state court can suffice to establish cause for a
procedural default only when the counsel's ineptitude rises to
the level of a violation of a defendant's Sixth Amendment right
to counsel." Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001);
see also Edwards, 529 U.S. at 451.

To demonstrate prejudice, a petitioner must show "not merely
that the errors at his trial created a possibility of prejudice,
but that they worked to his actual and substantial disadvantage,
infecting his entire trial with error of constitutional
dimensions." United States v. Frady, 456 U.S. 152, 170 (1982)
(emphasis in original); see, e.g., Rodriguez v. Mitchell, 252
F.3d 191, 203-04 (2d Cir. 2001); Holland v. Scully, 797 F.2d 57,
69 (2d Cir. 1986).

The second exception -- that failure to review petitioner's
claims would result in a fundamental miscarriage of justice -- is
reserved for the "extraordinary case, where a constitutional
violation has probably resulted in the conviction of one who is
actually innocent." Murray, 477 U.S. at 496; accord Sawyer v.
Whitley, 505 U.S. 333, 339 n.6 (1992). To establish "actual
innocence," petitioner must demonstrate that "in light of all the
evidence, it is more likely than not that no reasonable juror
would have convicted him." Bousley v. United States, 523 U.S.

37

614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)) (internal quotation marks omitted). In this context, "actual innocence means factual innocence, not mere legal insufficiency." Bousley, 513 U.S. at 623. Furthermore, the petitioner must support his claim "'with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.'" Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004) (quoting Schlup, 513 U.S. at 324); see also Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002).

## ii. Procedural Bar Assessment

Under the contemporaneous-objection rule embodied in N.Y. Crim. Proc. L. § 470.05, petitioner's failure to object at trial on the grounds that he now asserts in his habeas petition amounts to a lack of preservation, which ordinarily will preclude the state appellate courts from addressing a claim on its merits. People v. Richardson, 100 N.Y.2d 847, 853, 767 N.Y.S.2d 384, 387 (2003); People v. Allen, 86 N.Y.2d 101, 111, 629 N.Y.S.2d 1003, 1008 (1995). Moreover, the Appellate Division explicitly found the claims to be unpreserved and declined to review them in the interest of justice. Hicks, 46 A.D.3d at 466-67, 848 N.Y.S.2d at 142. Such reliance on the contemporaneous-objection rule

constitutes an independent state-law ground that bars habeas review by this court. See, e.g., Gutierrez v. Smith, 702 F.3d. 103, 111 (2d Cir. 2012) (quoting Peterson v. Scully, 896 F.2d 661, 663 (2d Cir. 1990) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977))); Kozlowski v. Hulihan, 511 F. App'x 21, 25 (2d Cir. 2013). Furthermore, the New York courts consistently enforce this rule of non-preservation when the defendant has failed to object to Batson determinations during voir dire, see, e.g., Rodriguez v. Schriver, 392 F.3d 505, 506 (2d Cir. 2004); People v. Smocum, 99 N.Y.2d 418, 423, 757 N.Y.S.2d 239, 243 (2003); People v. Linley, 60 A.D.3d 696, 697, 874 N.Y.S.2d 551, 551 (2d Dep't 2009); People v. Rivera, 225 A.D.2d 392, 393, 640 N.Y.S.2d 483, 484 (1st Dep't 1996), as well as when the defendant makes a general objection without specifying the specific grounds of the alleged error. See, e.g., Garvey v. Duncan, 485 F.3d 709, 715 (2d Cir. 2007) ("New York courts consistently interpret § 470.05(2) to require that a defendant specify the grounds of alleged error in sufficient detail so that the trial court may have a fair opportunity to rectify any error.") (citing People v. McLane, 256 A.D.2d 10, 10, 68 N.Y.S.2d 24 (1st Dep't 1998)); see also People v. Jackson, 76 N.Y.2d 908, 909, 563 N.Y.S.2d 42, 43 (1990).

Before moving on to the two possible exceptions to the procedural bar, we think it prudent here to further expound on

39

the interplay between the three unpreserved Batson claims and the contemporaneous-objection rule. During briefing on petitioner's original appeal to the Appellate Division, he submitted a reply that, inter alia, disputed the notion that Grounds One, Three, and Four were unpreserved. (See Ex. 3 to Resp't Decl. I). There, he quoted the following excerpt from Section 470.05 of the New York Criminal Procedure Law:

[A] protest need not be in the form of an 'exception' but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal.

Petitioner summarized the purported effect of this rule as follows: "Defense counsel need not have objected after the Court overruled defense counsel's Batson objection in order to preserve Defendant's present claims." (Ex. 3 to Resp't Decl. I at p. 7). In other words, petitioner suggested that the scope of the contemporaneous-objection rule was such than the original Batson challenge covered any further possible errors that may have stemmed from the resolution of that first objection.

Indeed, while we do not believe it applicable here, the next sentence of Section 470.05 (not quoted in petitioner's reply brief) makes petitioner's general point a bit more succinctly: "[A] party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed

40

to have thereby protested the court's ultimate disposition of the matter."

    This principle, however, does not neatly fit the issues at play in our case and, applying it to the underlying Batson claims here would be in contravention of the rules' ultimate purposes. Again, the contemporaneous-objection requirement is designed to "require that a defendant specify the grounds of alleged error in sufficient detail so that the trial court may have a fair opportunity to rectify any error." Garvey, 485 F.3d at 715 (emphasis added). In our case, defense counsel's first Batson objection put the court on notice of petitioner's position with respect to the prosecutor's peremptory strikes. When the trial judge ruled the prosecutor's proffered reasons for those strikes nonpretextual, defense counsel was under no obligation to register an "exception" to the ruling on the objection. However, the unpreserved claims arose only subsequent to that initial objection. If defense counsel wanted the trial judge to have the opportunity to rectify these other alleged errors -- that the judge should not have "compared" each side's peremptory strikes, that the judge did not sufficiently adjudicate the pretextual nature of the reasons for the strikes, and that the later Batson ruling, which was favorable to Hicks, evidenced earlier discrimination -- counsel needed to speak up. The earlier

objection could not suffice to alert the trial judge to those later issues because they had not yet come to pass.

Additionally, petitioner cannot demonstrate cause for the default.[12] Although Hicks asserted an ineffective-assistance claim in his coram-nobis application that was based in part on this failure by trial counsel (see, e.g., Ex. 5 to Resp't Decl. II), that Sixth Amendment theory is unavailing and thus cannot serve to show cause for his failure to preserve his Batson claims below. Petitioner's trial counsel was not constitutionally deficient. (Indeed, the record suggests that trial counsel did a capable job of advocating in petitioner's interest, including through his active Batson challenges and ultimate success in reseating one of the prosecutor's challenged jurors. (See Tr. I 203-04)). As we have discussed, see supra pp. 21-31, the trial court acted within its discretion in assessing petitioner's Batson challenges and determining that the majority of the prosecutor's jury challenges were not racially motivated, and thus trial counsel did not err in failing to preserve those

---

[12] Respondent posits -- in its first opposition to the petition, at least -- that petitioner is not entitled to review for cause and prejudice because he has failed to make either showing. (Resp't Mem. I 12). However, construing Hicks's petition and attendant submissions liberally to raise the best arguments they suggest, we assume that he eventually argues that his trial counsel's ineffectiveness was the cause of his failure to preserve these claims for appeal. Accord Leon v. Conway, 2010 WL 3001709, *7 n.8 (S.D.N.Y. July 30, 2010) (construing a single line in a habeas petition to suggest the argument that ineffective assistance constituted cause to overcome the procedural bar, even though petitioner did not explicitly argue as such).

unavailing arguments. By extension, appellate counsel also was not deficient in declining to challenge the adequacy of plaintiff's trial counsel.[13]

Because we find that petitioner fails to demonstrate cause for his procedural missteps, we decline to squarely address the issue of prejudice. We note, however, that we ultimately find petitioner's claims to be meritless, see infra pp. 45-50, which itself demonstrates a lack of prejudice for their not having been raised before the trial judge.[14]

---

[13] We consider counsel's performance more extensively in our evaluation of petitioner's Sixth-Amendment claims. (See infra pp. 50-69).

[14] We decline here to wade deeply into a discussion of how the prejudice analysis for procedurally barred habeas claims is impacted by the somewhat unique reality that Batson errors have been deemed "structural" and "not subject to harmless error review." Tankleff v. Senkowski, 135 F.3d 235, 248 (2d Cir. 1998); see also Reyes v. Greiner, 150 F. App'x 77, 78 (2d Cir. 2005); Wells v. Ricks, 2008 WL 606294, *17 (S.D.N.Y. Feb. 26, 2008) (citing Tankleff and surveying the similar state of the law in other circuits). In this regard, we simply observe that the typical conception of prejudice for habeas purposes -- namely, "actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions," Frady, 456 U.S. at 170 -- does not neatly fit habeas petitions grounded in alleged Batson errors.

Still, we note that former Chief Judge Korman -- in Reyes v. Greiner, 340 F. Supp. 2d 245, 277-278 (E.D.N.Y. 2004), aff'd on other grounds, 150 F. App'x 77, 78 (2d Cir. 2005) -- has made a strong case for separating Batson errors into substantive and procedural missteps. There, he writes as follows:

> Where a petitioner alleges only that the trial judge tripped up in some way in navigating the procedural steps necessary to resolve petitioner's Batson motion, as distinct from a claim that the trial judge permitted the prosecutor to exclude a prospective juror on the basis of race, and the error is one of the innocent mistakes that will inevitably be made in any system that processes large numbers of cases in good faith, there is no good reason why a federal habeas court should apply an automatic reversal rule, or further prolong the proceeding by remanding for a construction hearing that is 'subject to the usual risks of imprecision and distortion from the passage of time.'

Reyes, 340 F. Supp. 2d at 277 (internal citations omitted). Judge Korman has acknowledged that this approach "was foreclosed by Second Circuit precedent," Sorto v. Herbert, 364 F. Supp. 2d 240, 246 (E.D.N.Y. 2004), although the

Petitioner also has not demonstrated that a fundamental miscarriage of justice would result from imposition of the procedural bar. Specifically, petitioner has failed to show that he is innocent or that there is any new, reliable evidence to support a claim of innocence.[15]

In sum, the unpreserved <u>Batson</u> claims are barred from habeas review.

---

Second Circuit itself -- in declining to address Judge Korman's substantive/procedural <u>Batson</u> error dichotomy -- has referred to this framework as "powerful dicta." <u>Reyes</u>, 150 F. App'x at 78.

We mention the foregoing only to note that the allegations undergirding Grounds One, Three, and Four of petitioner's claims are properly categorized as procedural <u>Batson</u> errors, which would allow for habeas review of the possible prejudice inflicted by the trial judge if we were to accept Judge Korman's approach. Still, both because of the shaky (though, at the moment, settled) state of the law and because it is not necessary to find lack of prejudice to hold that petitioner's case is procedurally barred, we take this discussion no further.

[15] In petitioner's final submission to the court, he spends a fair amount of time exploring this exception to the procedural bar. (<u>See</u> Pet'r's Reply 11-14). However, his analysis misses the mark. He asserts that even a mere "claim of innocence could justify invocation of a fundamental miscarriage of justice exception" (<u>id.</u> at 13), a suggestion that, for obvious reasons, is wholly erroneous. Moreover, he claims that his innocence is borne out simply by the fact of the alleged <u>Batson</u> violations, stating that they "implicate the very fairness of the trial and cast[] serious doubt on the jury's finding of guilt." (<u>Id.</u> at 14). While we do not doubt that <u>Batson</u> furthers general notions of fairness, petitioner's allegations are insufficient to overcome the high hurdle of an unpreserved claim.

## 2. Merits of the Unpreserved Batson Claims

### i. Explicit Adjudication at Batson Step Three (Ground Three)

The trial court did not err when it summarily concluded that the prosecution's proffered reasons for striking the four jurors during the second round of jury selection were not pretextual. Petitioner rightly notes that a trial court is required to "explicitly adjudicate" the credibility of the nonmoving party's proffered rationale. Galarza, 252 F.3d at 636 (quoting Jordan v. Lefevre, 206 F.3d 196, 200 (2d Cir. 2000)). (See Addendum to Pet. 17). However, that requirement necessitates only that the judge explicitly decide whether the prosecution's explanation was pretextual. See, e.g., DeVorce v. Philips, 2013 WL 4406008, *12 (S.D.N.Y. Aug. 7, 2013).

In Galarza, the trial judge, in ruling on a Batson claim concerning challenges to five or six jurors, decided not to reseat any of them because, as he stated, he credited the reasons proffered for "at least three" of them. 252 F.3d at 639. The Circuit Court concluded that the trial judge had erred in failing to clearly state whether he credited the prosecution's reasons for challenging each of the jurors. Id. at 639-41. The trial

45

judge in Hicks's case did not make such a mistake -- he explicitly concluded that, with respect to all of the challenged jurors, the prosecution's reasons were credible. (Tr. I 183). Such an "'unambiguous rejection of a Batson challenge'" is all that is required. Dolphy v. Mantello, 552 F.3d 236, 239 (2d Cir. 2009) (quoting Messiah v. Duncan, 435 F.3d 186, 198 (2d Cir. 2006)).

Galarza does not describe whether or to what extent -- in rejecting or accepting reasons proffered for striking a group of jurors -- the trial court is required to provide explanations as to why it accepts or rejects the reasons for each specific juror. Moreover, both the Supreme Court and the Second Circuit have implied that such an explanation is not necessarily required. Miller-El v. Cockrell, 537 U.S. 322, 347 (2003) (explaining that "a state court need not make detailed findings addressing all the evidence before it" to render a proper Batson ruling); Messiah, 435 F.3d at 198 ("As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his Batson ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a Batson challenge.") (citing McKinney, 326 F.3d at 100).

46

Additionally, "courts applying the third Batson prong need not recite a particular formula of words, or mantra." Dolphy, 552 F.3d at 239 (citing Galarza, 252 F.3d at 640 n. 10). Said differently, "a judge need not engage in a 'talismanic recitation of specific words in order to satisfy Batson." DeVorce, 2013 WL 4406008, at *12 (quoting Messiah, 435 F.3d at 198). Thus, an explicit recitation of the names of those jurors whose peremptory strikes are being upheld is not a necessary piece of step three of a Batson analysis. Id.

Here, the nature of the trial judge's rejection of defense counsel's Batson objections was more than sufficient under these cases and was certainly neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

### ii. Comparison of Defense and Prosecution's Use of Challenges (Ground One)

As to petitioner's claim that the trial court impermissibly compared the prosecutor's use of challenges to that of the defense, the judge's comment concerning both sides' challenges was opaque, but it did not violate the rules governing the third stage of the Batson analysis. Respondent concedes that the judge's comment would have been improper had the trial court in

47

fact used the defense attorney's challenges to offset discriminatory challenges by the prosecutor. (Resp't Mem. I 22). See, e.g., Miller-El, 545 U.S. at 255, n.14; Harrison v. Ricks, 150 F. App'x 95, 97 (2d Cir. 2005) ("The manner in which the defendant exercises his or her own peremptory challenges cannot reasonably be said to buttress -- or undermine -- an inference of discrimination by the prosecution."). However, respondent contends that this is not what occurred. (Resp't Mem. I 22). Instead, respondent argues, the court's language was intended "merely as a statement that a reverse Batson challenge by the prosecutor would have received neither greater nor lesser scrutiny." (Id.).

We recognize that the trial court's colloquy was ambiguously phrased. Still, this, in and of itself, does not amount to error under Batson. Moreover, viewed in context, the court's colloquy does not appear to suggest, as petitioner argues, that the court was engaging in impermissible offsetting as between the parties. Indeed, the trial judge explicitly held that he did not find the prosecutor's reasons for the strikes to be pretextual (Tr. I 177-83) -- a finding entitled to substantial deference, see Batson, 476 U.S. at 98 n.21, and a step lacking in other cases cited by petitioner in which the trial judge did act unconstitutionally. See, e.g., People v. Mitchell, 80 N.Y.2d 519, 530, 591 N.Y.S.2d

990, 996 (1992). Furthermore, as later stages of the jury-selection process revealed, the judge in this case was clearly able and willing to critically evaluate and, when appropriate, reject the prosecutor's jury strikes.

### iii. The Prosecutor's Comments in Round Three of Voir Dire (Ground Four)

Petitioner's third Batson claim -- that the prosecutor's explanation for challenging Mr. Glasford in the third round of jury selection proves that his reasons in the second round were pretextual -- is also meritless. When the prosecutor's strike of Glasford was challenged, he first provided a race-neutral reason (namely, that he had relatives convicted of crimes (Tr. I 203)) before adding that if he had not challenged these jurors he feared he would be accused again of selectively using his peremptory challenges. (Tr. I 203-204). Petitioner contends, in somewhat conclusory fashion, that this demonstrates that the prosecutor's stated reasons for the challenges in round two were in fact pretextual. (Addendum to Pet. 23-24; Pet'r's Reply 18).

The prosecutor's statement does not prove that his reasons in round two of voir dire were pretextual. At most it suggests that his true reasons for challenging Mr. Glasford were motivated

49

by considerations different from those he had just proffered to the court; in other words, he was challenging Mr. Glasford for some other reason, perhaps consistency, and not actually because of his family's criminal history. In any event, the trial court did not credit the prosecutor's proffered reason as to Mr. Glasford. (Tr. I 204). Moreover, the judge implied that his ruling was not relevant to the prior challenges in round two, when he emphasized that, "I don't accept your race neutral explanation as to the juror challenge and find that it is pretextual as to him." (Tr. I 204) (emphasis added). There is simply nothing to suggest that the court's finding of discrimination in round three necessitated a finding of discrimination in round two.

C. <u>Ineffective-Assistance-of-Counsel Claims</u> (Grounds Five, Six, and Seven)

Petitioner invokes the same Sixth Amendment claims here that he pressed in his <u>coram-nobis</u> applications. (<u>See</u> Aff. in Supp. of Mot. to Am. ¶ 2; Exs. 5 & 9 to Resp't Decl. II). Embedded within his claim of ineffective assistance of appellate counsel is a claim of ineffective assistance of trial counsel. As summarized in his supplemental petition, Hicks argues that trial counsel denied him effective representation when they failed to (1)

50

preserve his Batson claims, (2) ensure the impartiality of a juror during voir dire and (3) object to the jury charge on justification. (See Aff. in Supp. of Mot. to Am. ¶ 2). Respondent contends that the state court's determination of petitioner's ineffective-assistance-of-counsel claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Resp't Mem. II 6-21).

We agree that petitioner fails to sustain his Sixth Amendment claims, and thus that the State court's denials of his coram-nobis applications were neither contrary to, nor unreasonable applications of, Supreme Court law. We address the merits of each of petitioner's Sixth Amendment claims in turn.

1. Sixth Amendment Criteria

Generally, to demonstrate ineffective assistance of counsel, a petitioner must show that his lawyer's performance was "so defective that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment ... and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)); see also Larcier v. United States,

51

2010 WL 4118100, *1 (S.D.N.Y. Oct. 19, 2010). As summarized in Brown:

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Id. at 79-80 (quoting Strickland, 466 U.S. at 690, 694); accord, e.g., Smith v. Spisak, Jr., 558 U.S. 139, 155 (2010); Palacios v. Burge, 589 F.3d 556, 561 (2d Cir. 2009); Henry v. Poole, 409 F.3d 48, 62-64 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004).

It bears emphasis that the Strickland standard is quite deferential, and that a claim of constitutional dimension does not arise unless a lawyer's error is so egregious as to amount to a failure to provide minimal professional representation. Thus, a habeas court weighing an ineffective-assistance claim must "determine whether, in light of all the circumstances, [counsel's] identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; accord, e.g., Kimmelman v. Morrison, 477 U.S. 365, 386 (1986); Loliscio v. Goord, 263 F.3d 178, 192 (2d Cir. 2001). In making this determination, "the court should recognize that

counsel is strongly presumed to have rendered adequate assistance." Strickland, 466 U.S. at 690.

The burden of proving prejudice is equally onerous. As noted, the petitioner must demonstrate "a reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Aparicio, 269 F.3d at 95 (citing Strickland, 466 U.S. at 674).

"Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing cases). In the context of such claims, the Supreme Court has stated that "[i]t is no[t] hard[] for a court to apply Strickland ... when a defendant claims that he received ineffective assistance of appellate counsel because his counsel, although filing a merits brief, failed to raise a particular claim." Smith v. Robbins, 528 U.S. 259, 288 (2000). Thus, a petitioner asserting a claim of ineffective assistance of appellate counsel must show both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal and that, but for counsel's malfeasance, there was a reasonable probability that defendant's appeal would have been successful. See, e.g., Mayo, 13 F.3d at

533; <u>Glover v. Filion</u>, 2009 WL 2512858, *5 (W.D.N.Y. Aug. 14,
2009); <u>Brown v. Filion</u>, 2005 WL 1388053, *15 (S.D.N.Y. June 13,
2005).


We emphasize that, with respect to the performance prong of
the <u>Strickland</u> test, "appellate counsel who files a merits brief
need not (and should not) raise every nonfrivolous claim, but
rather may select from among them in order to maximize the
likelihood of success on appeal." <u>Smith</u>, 528 U.S. at 288. "This
process of 'winnowing out weaker arguments on appeal and focuing
on' those more likely to prevail, far from being evidence of
incompetence, is the hallmark of effective appellate advocacy."
<u>Sellan</u>, 261 F.3d at 317 (quoting <u>Smith v. Murray</u>, 477 U.S. 527,
536 (1986); <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983)).
Necessarily, then, "reviewing courts should not employ hindsight
to second-guess an appellate attorney's choices concerning
strategy." <u>Quintana v. McCoy</u>, 2006 WL 300470, *6 (S.D.N.Y. Feb.
6, 2006) (citing <u>Jones</u>, 463 U.S. at 754).


We finally note that, to trigger the limitations on habeas
review under section 2254(d), "the state court need only dispose
of the petitioner's federal claim on substantive [not procedural]
grounds, and reduce that disposition to judgment. No further
articulation of its rationale or elucidation of its reasoning

process is required." Aparicio, 269 F.3d at 94 (citing Sellan, 261 F.3d at 312). Indeed, the state court's decision need not contain any explanation of the reasons for its ruling, and the habeas court is to presume that the state court ruled on the merits "in the absence of any indication or state-law procedural principles to the contrary." Harrington, 562 U.S. at __, 131 S.Ct. at 786.

Thus, the summary denial of Hicks' coram-nobis applications constitutes a ruling on the merits of Hicks' Sixth-Amendment claims and, accordingly, his petition can be granted on these grounds only if the state-court ruling was "contrary to or an unreasonable application of Strickland." Nicholas v. Smith, 329 F. App'x 313, 316 (2d Cir. 2009); see also Glover, 2009 WL 2512858, at *5 ("The state court denied [petitioner's] coram nobis application challenging his appellate counsel's performance in a single-word order -- '[d]enied.' This constitutes adjudication on the merits."); Zapata v. Greiner, 2001 WL 1670367, *3 (S.D.N.Y. Dec. 28, 2001).

## 2. Assessment of Counsel's Effectiveness

We reiterate that the claims at issue here concern allegations of ineffective assistance of appellate counsel for

55

failing to raise <u>trial</u> counsel's allegedly ineffective representation at trial. (<u>See</u>, <u>e.g.</u>, Pet'r's Reply 21).

Hicks argues that appellate counsel failed in their representation by neglecting to "raise ineffective assistance of trial counsel for failure to preserve" the <u>Batson</u> claims rejected by the Appellate Division as unpreserved. (<u>Id.</u> at 22-23). Elsewhere, petitioner frames this argument as alleging that appellate counsel chose "to argue particularly weak appellate issue[s] that had little chance of success" (Pet'r's Mem. 3), implicitly asserting that appellate counsel should have argued for ineffective assistance of counsel, in lieu of the substantive <u>Batson</u> claims.

Hicks also argues that appellate counsel was ineffective for failing to spot the jury-charge and juror-impartiality issues that he raised in his second <u>coram-nobis</u> application and in his habeas petition. (Pet'r's Mem. 5-10). In addition to his claim that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel, petitioner charges that "representation by appellate counsel was perfunctory in nature." (Pet'r's Reply 22).

56

Respondent argues that appellate counsel provided effective representation. (Resp't Mem. II 10-11). As concerns the Batson claims, respondent also contends that, while appellate counsel did not raise an ineffective-assistance-of-trial-counsel claim, they did raise the underlying issues supporting that claim. (Id. at 12). Since the Appellate Division disposed of one of those issues on the merits and the other three alternatively on the merits, respondent asserts that the Appellate Division's determination that appellate counsel rendered effective representation on these issues was not an unreasonable application of Supreme Court law. (Id.). As to the claims regarding the jury instruction and the allegedly partial juror, respondent asserts that the underlying claims are meritless and, even if not, petitioner was not prejudiced by the potential errors. (Id. at 13-20).

Apart from the fact that, as mentioned, appellate attorneys have broad discretion to decide the proper grounds on which to appeal, we conclude that the underlying Sixth Amendment challenges to trial counsel would have been meritless. Therefore, their omission on appeal cannot be deemed ineffective representation.

We address each underlying claim in turn.

57

i. <u>Failure to Preserve Batson Claims</u> (Ground Five)

With regard to the <u>Batson</u> claims, petitioner fails to satisfy either prong of the <u>Strickland</u> test as against trial counsel and, thereby, as against appellate counsel as well.

First, in light of all the circumstances, trial counsel's performance with respect to <u>Batson</u> was not outside the wide range of professionally competent assistance. Trial counsel actively participated in the <u>Batson</u> process, raising multiple <u>Batson</u> challenges, in more than one round of <u>voir dire</u>, which resulted in the preservation of the general objections on appeal and the reseating of a juror. (Tr. I 178-83, 203-04). Upon stating the first <u>Batson</u> challenge, counsel successfully made a <u>prima facie</u> case for discrimination. (<u>Id.</u> at 178-79). Even after the prosecutor provided facially neutral reasons for the peremptory challenges, counsel attempted to show that those explanations were pretextual by pointing out similar persons whom the prosecutor had not challenged. (<u>Id.</u> at 180-81).

Moreover, Hicks' critique assumes that he would have had a valid basis for objecting to the court's handling of the <u>Batson</u> challenges at trial, an assertion that is not borne out by the record since the underlying <u>Batson</u> claims are meritless. (<u>See</u>

58

<u>supra</u> pp. 45-50). The failure of a lawyer to invoke meritless
objections cannot constitute constitutionally deficient
performance. <u>See</u> <u>United States v. Regalado</u>, 518 F.3d 143, 150 n.3
(2d Cir. 2008) (quoting <u>United States v. Arena</u>, 180 F.3d 380, 396
(2d Cir. 1999) ("Failure to make a meritless argument does not
amount to ineffective assistance.")). Since petitioner's <u>Batson</u>
claims are meritless (<u>see</u> <u>supra</u> pp. 21-31, 45-50), his attorney
would have had no basis for raising objections at trial,[16] nor
would appellate counsel have had a basis for addressing the lack
of these objections on appeal.[17]

### ii.  Failure to Preserve Jury Charge Claim
(Ground Six)

To the extent that petitioner claims ineffective assistance
of appellate counsel based on their omission of an attack on
trial counsel for attorney's failure to object to the jury
charge, his claim also fails.

Petitioner argues that trial counsel was ineffective for
failing to object to the jury charge on justification, which he

---

[16] We again note that the Appellate Division, too, found that "[w]ere we to
review these claims, we would find no basis for reversal," <u>Hicks</u>, 46 A.D.3d at
4667, 848 N.Y.S.2d at 142, further underscoring the meritless nature of these
claims.
[17] It is worth noting that, in the face of the State's opposition to
petitioner's original appeal -- in which the prosecutor raised the failure-to-
preserve issue -- petitioner's appellate counsel argued that the claims in
question were, in fact, preserved. (<u>See</u> Ex. 3 to Resp't Decl. I).

believes impermissibly allowed the jury to consider the manslaughter count even if he was found to be justified on the murder count. (Mem. in Supp. of Mot. to Am. [hereinafter "Pet'r's Mem."] 7-10). According to petitioner, the instruction should have read as follows: "That if they find the defendant not guilty of the greater charge on the basis of justification, they are not to consider any lesser included offenses." (Pet'r's Reply 26). If counsel had raised this issue, petitioner argues, it would have been more likely that his conviction would have been reversed or at least modified. (Pet'r's Mem. 9; Pet'r's Rep. 26-27). Respondent contends that the court's jury instruction was adequate, and, alternatively, even if it was erroneous, it was harmless in light of the overwhelming evidence of petitioner's guilt. (Resp't Mem. II 15-21). We agree with respondent that the jury charge on justification was adequate and that Hicks's claim is meritless.

Following the presentation of evidence and summation, the trial court provided a set of jury instructions that explained the justification defense in the context of the crimes charged. (Tr. III 546-550). First, the court noted that the burden of proof for justification is on the State, stating explicitly that defendant is not required to prove that he was justified, and that rather "[t]he people are required to prove beyond a

reasonable doubt that the defendant was not justified." (Id. at 546). After explaining the terms used in the definition of justification, the court instructed the jury again that "[t]he People are required to prove beyond a reasonable doubt that the defendant was not justified." (Id. at 550). The court continued: "It is thus an element of the first two counts that the defendant was not justified. As a result, if you find that the People have failed to prove beyond a reasonable doubt that the defendant was not justified, then you must find the defendant not guilty of both of those counts." (Id. at 550). The court then listed the elements of both the murder and the manslaughter counts separately, requiring the jury to find, on each, whether the prosecutor had proved beyond a reasonable doubt that "the defendant was not justified in his intent and actions." (Id. at 551, 554). Following the listing of elements, the court instructed the jury that "if you find that the People have not proven beyond a reasonable doubt any one or more of these elements you must find the defendant not guilty." (Id. at 552, 554). In explaining that justification did not apply to the weapons-possession count, the court again reminded the jurors that the defense "applies to the first two counts." (Id. at 555).

Though Hicks argues that a proper jury instruction would have required the jurors to bypass consideration of the

61

manslaughter count if they found him to be justified on the murder count (Pet'r'r Reply 26), it is not clear that New York law unequivocally requires such a "stop-consideration" charge. See, e.g., Chambers v. Conway, 2010 WL 1257305, *2 (S.D.N.Y. Mar. 29, 2010) (citing Duncan v. Fischer, 410 F.Supp.2d 101, 113-14 (E.D.N.Y. 2006)) ("Other courts in this Circuit have found that New York case law does not require that a trial court specifically instruct a jury that it must stop consideration of lesser counts if it finds a defendant not guilty of a greater count based on the defense of justification, as long as the trial court otherwise instructs the jury that it must acquit the defendant if the prosecution fails to disprove the justification defense."); Holmes v. Brown, 2013 WL 6408496, *8 (E.D.N.Y. Dec. 6, 2013), motion for relief from judgment denied, 2014 WL 1653265 (E.D.N.Y. Apr. 24, 2014) ("The New York Court of Appeals, however, has not yet ruled on whether such an instruction is required."). Compare People v. Feuer, 11 A.D.3d 633, 634, 782 N.Y.S.2d 858, 860 (2d Dep't 2004) (failure to give "stop-consideration" charge "is of such a nature and degree so as to constitute reversible error") with People v. Hayes, 72 A.D.3d 441, 443, 901 N.Y.S.2d 154, 157 (1st Dep't 2010) (failure to give "stop-consideration" charge is excusable, provided "the charge, when read as a whole, adequately conveyed the [underlying] principle") (internal quotation omitted).

Notably, courts in this Circuit have expressly dealt with the question of whether the failure to object to the type of jury charge at issue here constitutes ineffective assistance of counsel. See, e.g., Love v. Smith, 2009 WL 2422384, *7 (E.D.N.Y. Aug. 6, 2009). Unsurprisingly, they have answered in the negative:

> Because there is no clear state rule on whether the stop-consideration language must be included, counsel's decision not to object to the justification charge did not constitute ineffective assistance, and this Court therefore cannot hold that the [Appellate Division's] ineffective assistance determination was either contrary to, or an unreasonable application of, the Strickland standard.

(Id.).

Furthermore, even if New York law does require a stop-consideration charge, and the charge as given was erroneous, it adequately conveyed that the justification defense applied to both the manslaughter and the murder counts. Therefore, there is no reason to believe that the jury verdict would have come down differently if petitioner's desired instruction had been given.

Petitioner argues that the jury's acquittal of the murder count "in all probability" was based on their belief that he was justified. (Pet'r's Reply 26). He provides no support for this contention, and indeed, it is wholly baseless.

63

First, as the Supreme Court has noted, courts "generally presume that jurors follow their instructions." <u>Penry v. Johnson</u>, 532 U.S. 782, 799 (2001) (citing <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987)); <u>United States v. Stewart</u>, 590 F.3d 93, 124 (2d Cir. 2009). If the jurors followed the detailed instructions, it is not possible that they credited the justification defense and still found Hicks guilty of manslaughter, since the court had adequately told the jurors that lack of justification was an element of that crime. (<u>See</u>, <u>e.g.</u>, Tr. III 550). Second, given the evidence in the case and the elements of the charged crimes, it is highly likely that the jurors found Hicks not guilty of murder based on their conviction that he did not intend to kill Mr. Mallette, but rather to cause him serious physical injury.[18] The evidence presented at trial suggested that Hicks had shot four times[19] from a distance of 35-40 feet, as Mallette walked to his car (Tr. II 318, 322, 337-39), and that one of the bullets had hit Mallette only after ricocheting off a nearby object. (<u>See</u>, <u>e.g.</u>, <u>id.</u> at 387-88). Hicks testified that if he had wanted to kill Mallette he would have "walked up behind and shot him." (<u>Id.</u> at 338).

---

[18] The second element of second-degree murder was defined as "intent to cause the death of Terrance Mallette," whereas the second element of first-degree manslaughter was defined as "intent to cause serious physical injury to Terrance Mallette." (Tr. III 551, 553).

[19] Hicks claimed he only remembered shooting twice, but the ballistics expert testified that the four shell casings found on the ground were all from the same gun. <u>See</u> <u>supra</u> pp. 7-8.

64

In light of these considerations, petitioner's ineffective-assistance claim must fail. Petitioner can show neither that trial counsel's conduct fell below reasonable professional standards nor that there was any chance that the proceedings would have come out differently had the court given the jury a stop-consideration charge. Accordingly, the Appellate Division's denial of his coram-nobis application -- complaining about appellate counsel's failure to raise this issue -- was neither contrary to, nor an unreasonable application of, Supreme Court law, and petitioner is not entitled to habeas relief on this ground.

### iii. Juror Impartiality Claim (Ground Seven)

Petitioner argues that his appellate attorney should have targeted trial counsel's failure to ensure that a potential juror, Ms. Delerme, unequivocally stated that she could remain impartial. (Pet'r's Mem. 5-7; Pet'r's Reply 23-25). Ms. Delerme noted on her questionnaire that she had served on a jury before and stated that she had "some intense feelings about it." (Tr. I 163). During jury selection, petitioner's trial counsel questioned Ms. Delerme about her prior experience serving on a jury. (Id.). The following colloquy ensued:

THE PROSPECTIVE JUROR: The actual case was based, two young men that were in Rikers Island and one slashed the other and the charges were dropped and I was just --

MS. MEISE: So --

THE PROSPECTIVE JUROR: I'm sorry, I was just pretty much -- I got emotional over it just because of the injustice and was not able to maintain objectivity.

MS. MEISE: But do you recognize that that was a very different situation than the type of case that we have here?

THE PROSPECTIVE JUROR: I do, I do.

MS. MEISE: That in no way would affect your ability here?

THE PROSPECTIVE JUROR: I pray not, I pray not.

(Id. at 163-64). Respondent contends that the decision not to challenge Ms. Delerme was a strategic choice and did not constitute a Sixth Amendment violation. (Resp't Mem. II 13-15). Respondent further posits that even if this were a violation, any prejudice is purely hypothetical and thus the state court's rejection of the claim was not an unreasonable application of Strickland. (Id.). We agree.


As petitioner observes (see Pet'r's Reply 24), a criminal defendant has a right to a trial by an impartial jury. See U.S. CONST. amend. VI; Duncan v. Louisiana, 391 U.S. 145 (1968). However, "[a]n attorney's actions during voir dire are considered to be matters of trial strategy." Charlemagne v. Goord, 2008 WL

2971768, *27 (S.D.N.Y. June 30, 2008) (quoting Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001)), adopted, 2011 WL 2150646 (S.D.N.Y. May 23, 2011). Especially when trial counsel is otherwise actively engaged in voir dire, courts afford wide latitude to attorneys who object to some jurors and not others. See, e.g., Charlemagne, 2008 WL 2971768, at *27; Nova v. Ercole, 2007 WL 1280635, *8 (S.D.N.Y. Apr. 30, 2007) ("Counsel exercised two peremptory challenges for other prospective jurors during voir dire. This suggests that counsel deliberately chose not to challenge [the juror in question] as part of trial strategy that 'might be considered sound.'") (quoting Strickland, 466 U.S. at 690); see also Allen v. Artus, 2014 WL 1918721, *20 n.10 (E.D.N.Y. May 14, 2014) ("During the trial, defense counsel did make objections in several instances, which indicates that the choice not to object at other times was driven by strategy.") (internal quotation omitted).

Here, as in the above cases, defense counsel was actively engaged in voir dire, through both the direct questioning of prospective jurors, objections, and repeated peremptory strikes. In this context, counsel's choice to leave Ms. Delerme among the jurors cannot be said to have been "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

This is evidenced not only by counsel's representation throughout trial, but by the nature of Ms. Delerme's statements during voir dire. She never claimed that she doubted her ability to be fair and impartial, only that she had become emotional on a previous occasion. (Tr. I 163-64). Moreover, even if her statements about that earlier trial could be construed as doubting her ability to sit impartially on the jury for petitioner's trial, she subsequently expressed her intention to attempt to be impartial. (Id.). Indeed, when a juror

> express[es] some reservations about his ability to be fair and impartial, the Second Circuit has held that if the juror later expresses during void dire that he will try to decide the case based on the evidence presented, that assurance will generally be sufficient for both the attorney and the court.

Guerro v. Payant, 2010 WL 2545818, *19 (E.D.N.Y. June 21, 2010) (citing United States v. Towne, 870 F.2d 880, 885 (2d Cir. 1989)). In the absence of any affirmative evidence of partiality, petitioner cannot claim that his attorney erred in failing to challenge Ms. Delerme. Accordingly, trial counsel's decision not to challenge Ms. Delerme does not violate the performance prong of the Strickland standard.

Furthermore, even assuming arguendo that petitioner were able to prove that the decision not to challenge juror Delerme was outside the range of professionally acceptable behavior,

petitioner could not show that he was prejudiced by this choice. In order to show prejudice, petitioner "'must show that the juror was actually biased against him.'" Figueroa v. Ercole, 2013 WL 3655903, *24 (S.D.N.Y. July 15, 2013) (quoting Hughes, 258 F.3d at 457, and citing Patton v. Yount, 467 U.S. 1025, 1029-30 (1984)); accord United States v. Torres, 128 F.3d 38, 43 (2d Cir. 1997) (defining actual bias as "bias-in-fact" or "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality"). "Petitioner has not pointed to any facts in the record which would indicate that Juror [Delerme] was actually biased against him. Thus, petitioner cannot prove that he has been prejudiced by his counsel's decision not to challenge [her]." Guerro, 2010 WL 2545818, at *20. The same is true of appellate counsel's decision not to question trial counsel's stance vis-a-vis this juror.

## CONCLUSION

For the reasons stated, we recommend that the writ be denied and the petition dismissed. Petitioner having failed to make a "substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), we also recommend that no certificate of appealability be issued.

69

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Alison J. Nathan, Room 2102, 40 Foley Square, New York, New York 10007-1312 and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

**DATED:**     **New York, New York**
              **February 9, 2015**

                              **RESPECTFULLY SUBMITTED,**


                              **MICHAEL H. DOLINGER**
                              **UNITED STATES MAGISTRATE JUDGE**

70

Copies of the foregoing Report & Recommendation have been
     mailed today to:

**Mr. Christopher Hicks**
05-A-1655
Green Haven Corr. Fac.
P.O. Box 4000
Stormville, NY 12582
PRO SE

**Kayonia Latisha Whetstone, Esq.**
**Rafael Antonio Curbelo, Esq.**
The Bronx District Attorney's Office
198 East 161st Street
Bronx, NY 10451